**MOTOR VEHICLE MANUFACTURERS ASSOCIATION OF THE UNITED STATES, INC. and Automobile Importers of America, Inc., Plaintiffs,**

v.

**Robert ABRAMS, Attorney General of the State of New York, Defendant.**

**No. 86 CIV. 9592 (LBS).**

United States District Court, S.D. New York.

May 10, 1988.

Hughes Hubbard & Reed, New York City, for plaintiffs; Philip A. Lacovara, William R. Stein, Edward J. Rubenstein, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, pro se; Jane M. Azia, Asst. Atty. Gen., of counsel, for defendant.

---

## OPINION

SAND, District Judge.

Plaintiffs, Motor Vehicle Manufacturers Association of the United States, Inc. and Automobile Importers of America, Inc., seek declaratory and injunctive relief against the enforcement of certain provisions of the New York General Business Law ("GBL") § 198-a, popularly known as the "Lemon Law." Plaintiffs have moved for partial summary judgment on certain of the counts and have deferred moving on other counts as to which discovery has not been completed. We deal herein only with the claim that the 1987 Amendment to the "Lemon Law" constitutes an unconstitutional prior restraint on speech violative of the First Amendment, made applicable to the states through the Fourteenth Amendment.

### Legislative History

In June 1983, New York adopted the "Lemon Law," Ch. 444, L.1983, codified at GBL § 198-a, said by its proponents to clarify and codify certain rules and evidentiary presumptions governing consumer remedies for breach of warranty in connection with the sale of motor vehicles.

In 1986, the "Lemon Law" was amended to add provisions regulating informal dispute resolution programs. In 1987, after a state court ruled that Ford Motor Company's $100 "deductible" for certain repairs was illegal under the "Lemon Law," Ford announced that it would impose a "Lemon Law"—related surcharge on all vehicles sold and registered in New York to reflect the increased costs it would incur in complying with the statute. Ford, a member of plaintiff association, identified this surcharge on the window sticker that is required by federal law and made part of the sales agreement (15 U.S.C. §§ 1231 et seq.; the so-called "Monroney Sticker"), and that shows the price breakdown of the vehicle. The $115 surcharge was described as a "N.Y. Mandatory Repair Coverage Option."

On July 2, 1987, New York State Senator L. Paul Kehoe wrote to the Chairman of the Board and Chief Executive Officer of Ford stating that the legislature would "not respond favorably" to any attempt by Ford to "charge New York State consumers an additional $115 for providing the warranty required under the New York Lemon Law." The Senator further threatened to "immediately introduce legislation which will prohibit the imposition of an additional charge on New York consumers for compliance with New York law contained in the New York Car Lemon Law." The Senator described Ford's conduct as an "attempt to blackmail" the Legislature. Letter of L. Paul Kehoe, July 2, 1987, Ex. H to the Declaration of Edward J. Rubenstein, Esq., Attorney for Plaintiff, dated Feb. 2, 1988.[1]

On July 7, 1987, without hearing or debate, the Legislature adopted the 1987 Amendment, which reads:

"Any provision of any agreement entered into by a consumer for the purchase of a new motor vehicle which includes as an additional cost for such motor vehicle an expense identified as being for the purpose of affording such consumer his or her rights under this section, shall be void as contrary to public policy."

GBL § 198-a(i). The bill was signed by the Governor on July 23, 1987 and was effective immediately.

The Attorney General has taken the position in pleadings in related state court litigation that the 1987 Amendment does not in fact contain a prohibition against the imposition of an additional charge for compliance with the "Lemon Law." Rather, the Attorney General has stated that the 1987 Amendment:

"simply prohibits the *identification* in the *purchase agreement* of any charge as being for the purpose of affording a customer his or her rights under the Lemon Law." (Emphasis in original).

---

**1.** The State asserts that the matter was discussed at a special meeting of the Assembly Consumer Affairs Committee which reported the amendment out of Committee. Counter Statement of Material Facts ¶ 5.

Affirmation of Assistant Attorney General Thomas G. Conway, in *Abrams v. Ford,* Ex. I to Declaration of Edward J. Rubenstein, *supra,* at ¶ 19.

In compliance with the 1987 Amendment, Ford revised its Monroney Stickers to eliminate the reference to the New York "Lemon Law." Thus, as a consequence of the 1987 Amendment, although a charge for compliance with the "Lemon Law" may be imposed and is lawful, automobile dealers cannot use the purchase agreement as a means to explain to purchasers why vehicles sold in New York have a higher sticker price than those sold in adjoining states. Plaintiffs urge that this prohibition, not against imposition of the charge, nor for that matter against its disclosure in all fora, but against its disclosure in the sales agreement, is an unconstitutional restraint on speech. We agree.

### Discussion

Plaintiffs assert that the 1987 Amendment is a restriction on commercial speech (*i.e.,* "expression related solely to the economic interests of the speaker and its audience," *Central Hudson Gas & Electric v. Public Service Comm. of New York,* 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed. 2d 341 (1980)), and there is no dispute as to this point. *See* Plaintiffs' Memorandum, dated Feb. 2, 1988, at 16; Attorney General's Memorandum, dated Feb. 16, 1988, at 48.[2]

The Supreme Court has established a four-part analysis for determining the validity of restrictions on commercial speech:

"At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is

substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

*Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351.

The State has made clear that it is entirely lawful for an automobile manufacturer to impose on its customers a charge resulting from the costs of compliance with the Lemon Law. The prohibited speech therefore relates to lawful activity. There can also be little debate that a substantial governmental interest is served by the State's overall efforts at consumer protection. Thus, the validity of the 1987 Amendment hinges upon the questions of whether the speech is misleading and, if not, then whether the regulation directly advances the State's interest, and whether the total prohibition on such speech is "more extensive than is necessary" to serve that interest.

Plaintiffs urge that it is no more misleading to state a cost for "Lemon Law" compliance than it is to state a cost for the rear window defogger that is mandatory in New York but is a consumer option in other states. The State replies that "attributing cost to so-called government compliance is inherently deceptive because these costs are so difficult to quantify and Ford has never even attempted to justify their costs." Transcript, Oral Argument, Feb. 18, 1988, at 31.

There are two complete responses to the State's contention. First, the charge, disclosure of which in the sales agreement is prohibited by the statute, is presumably not the actual *cost* of compliance but rather the *charge* which the manufacturer is in fact imposing on New York automobile

---

**2.** The 1987 Act does not literally prohibit disclosure of the "Lemon Law" compliance charge. Rather it declares that any such "provision of any agreement ... shall be void as contrary to public policy." The State does not contend that this is an invalidation of a contractual provision rather than a restriction on commercial speech. Since the charge is conceded to be lawful but any provision of the sales contract identifying

the charge is void, it would be difficult to argue that speech is not restrained. The State describes the statute as a prohibition on identification (Conway Affirmation, *supra,* at ¶ 19), and we accept that characterization because the only other conceivable interpretation, a prohibition on the imposition of the charge, would also, as the State recognizes, be unconstitutional.

sales, a charge not imposed in other states. If the State were to determine that the wording of the disclosure in the sales agreement was not clear enough, it could require clarification. Second, the State has not even attempted to make a showing to support its claim that costs of compliance are not capable of calculation.

Moreover, the issue of whether the speech is misleading overlaps in two significant ways with the issues of whether the regulation directly advances the governmental interest asserted and whether the government restraint is excessive:

1) the statute does not prohibit the disclosure by means other than the purchase agreement (of which the Monroney Sticker is an element) of information that the State here claims is misleading; and

2) the statute does not limit itself to a prohibition on false or misleading statements as to the charges imposed, but instead voids all statements on this subject in the sales agreement.

The assumption that all statements as to compliance charges imposed are necessarily deceptive cannot be accepted without some evidence. Here the State has presented no evidence to support its assertion. It has not shown that the restriction directly advances the substantial interest in consumer protection, and the fact that the "misleading" message is not prohibited in other media tends to suggest that some other interest is at issue here. Nor, in the Court's opinion, has the State made any effort to tailor its restriction to further the asserted interest in consumer protection. There would be significantly different issues before the Court were the State, for example, to require automobile manufacturers to document their statements relating to compliance fees (*e.g.*, by filing certified accountants' statements relating to the cost of compliance and the profit factor added).

As the Second Circuit has recently noted:

"*Central Hudson* makes clear that 'if the government interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.' 447 U.S. at 564."

*Fox v. Board of Trustees*, 841 F.2d 1207, 1214 (2d Cir.1988).

Nor can the State validly defend the statute on the grounds that "the experience with Ford indicated that it was a blatantly false charge." Transcript, *supra*, at 30–31. Previous deceptive conduct may be subject to sanctions of some sort, but one cannot prohibit speech because a speaker is thought to have spoken falsely in the past. *See Lowe v. Securities and Exchange Commission*, 472 U.S. 181, 235, 105 S.Ct. 2557, 2586, 86 L.Ed.2d 130 (1985) (White, J., concurring). Even if this were a valid rationale for a restraint on speech, the wording of the statute does not limit its applicability to those who have been found to have made prior false statements.

Finally, we consider the contention of the State that the statute can withstand constitutional challenge because:

"... it only prohibits the disclosures in the purchase agreement. Manufacturers are free to make disclosures in other ways. They are free to disclose in advertising. It is only on the purchase agreement [that they cannot disclose the charge]."

Transcript, *supra*, at 32.

First of all, the statute cannot be justified as a "constitutionally permissible time, place, or manner restriction" since such a restriction "may not be based upon either the content or subject matter of speech." *Consolidated Edison v. Public Service Commission*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980).

Secondly, the test for constitutional validity of restraints on speech, even commercial speech, is not whether the would-be speaker may express his views in some other forum or by some other means. Here, the speech is prohibited in the most logical and relevant place for it to occur. Where the content of commercial speech is at issue, a prohibition on the use of a particular method of communication violates the First Amendment even if other, but less satisfactory, methods of communication exist. *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 95–

97, 97 S.Ct. 1614, 1619–20, 52 L.Ed.2d 155 (1977). This is true even where the statute serves an important governmental objective, and particularly so where the Court is not convinced that the regulation of speech is necessary for the accomplishment of that objective. *Id.* at 93, 97 S.Ct. at 1618. The State must satisfy a heavy burden in order to sustain a prohibition of the statement of a particular cost, actually and lawfully imposed, in the document that lists all other such costs.

Plaintiffs also argue that the 1987 Amendment violates the equal protection clause in that it singles out only automobile manufacturers and retailers of motor vehicles. In view of our determination of invalidity under the First Amendment, we need not reach this issue.

Plaintiffs' motion for summary judgment is granted insofar as that complaint alleges that the 1987 Amendment violates the First Amendment. We defer our ruling with respect to all of plaintiffs' other claims.

SO ORDERED.